IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | CRIMINAL INDICTMENT |
| v. ) | |
| ) | CASE NO.  1:13-CR-382-JEC-LTW |
| ) | |
| ) | |
| RAMIRO ANTUNEZ-PINEDA, ) | |
| ) | |
| ) | |
| Defendant. ) | |

**<u>DEFENDANT' S PRELIMINARY MOTION TO DISMISS FOR VIOLIOTATION OF SPEEDY TRIAL ACT</u>**

COMES NOW, the defendant Ramiro Antunez-Pineda, by and through counsel, William H. Thomas Jr., and files this Motion to Dismiss for Violation of the Speedy Trial Act ("the Act").  In support thereof, the defendant shows the following:

I.

<u>Introduction</u>

On May 14, 2013, after a two-year investigation conducted by and at the direction of the Drug Enforcement Administration, Mr. Ramiro Antunez-Pineda was arrested by the DeKalb County Police Department at the direction of federal agents.  The instant investigation leading to the arrest of Mr. Antunez-Pineda, was conducted by DEA using multiple state prosecutorial agencies, the state of Georgia

judicial system, state prosecutors, and state and local law enforcement officers/agents. The instant investigation by these various state and local agencies was a sham and a ruse that was done only to facilitate a federal investigation, and to allow agents to avoid the provisions of Rule 5 of the Federal Rules of Criminal Procedure, and the time limitations of the Speedy Trial Act as set forth in 18 U.S.C. 3161 et seq. (generally requiring that a defendant be taken without unnecessary delay before a magistrate judge and that an indictment be returned within 30 days of arrest).

The investigation instant was funded, conducted and directed by DEA agents. During the course of the investigation, multiple arrests including the arrest of defendant Ramiro Antunez-Pineda, were made by state and local police officers at the direction of DEA. These defendants and Mr. Ramiro Antunez-Pineda were then held in state custody for the purpose of answering federal charges.

On May 14, 2013, Mr. Ramiro Antunez-Pineda was arrested as a result of the above-referenced investigation. On August 13, 2013, he was indicted by the DeKalb County District Attorney's office for drug trafficking charges. On September 26, 2013, Mr. Antunez-Pineda was scheduled for arraignment on those charges in DeKalb County Superior Court, but arraignment was waived by counsel on September 25. On September 30, five days after the arraignment was scheduled (and six days after Mr. Antunez-Pineda waived formal arraignment), the DeKalb

County District Attorney's Office dismissed its case, and closed its investigation of Mr. Antunez-Pineda and his co-defendants. Mr. Antunez-Pineda was held in state custody for 140 days before his case was dismissed and he was released to federal authorities. (*See* Doc. 20).

On September 18, 2013, the defendant was indicted by a grand jury sitting in the Northern District of Georgia for drug trafficking charges. (*See* Doc. 1). On October 1, 2013, five days after being scheduled for arraignment in DeKalb County Superior Court (and six days after waiving arraignment), Mr. Antunez-Pineda was transferred into federal custody and was arraigned on those federal charges (*See* Doc. 20). Mr. Antunez-Pineda has remained in continuous custody, either state, or federal, since May 14, 2013.

## II.

## Legal Argument

Title 18 U.S.C. 3161(b) provides in part that "an information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." As set forth below, the general rule for calculating this 30 day period begins on the date of a defendant's arrest by federal authorities for the purpose of answering federal charges. Courts however, have recognized a "ruse" exception to the general rule, which is applicable if

3

federal authorities cause or facilitate the arrest of a defendant by state authorities solely for the purpose of answering federal charges. Mr. Antunez-Pineda contends that state and federal authorities colluded to deprive him of is right to a Speedy Trial, and that the investigation was a ruse (or sham) orchestrated by DEA solely for the purpose of holding him to answer federal charges. Accordingly, the 30-day period for indicting Mr. Atuna-Pineda began on May 14, 2013, the date of his arrest by the DeKalb County Police Department.

In *United States v. Shahryar*, 719 F.2d 1522, 1524-25 (11th Cir. 1983), the Eleventh Circuit recognized the general rule with regard to the application of the Speedy Trial Act ("the Act"), that is for the Act to commence it is only a federal arrest which triggers the 30-day period in which an indictment must be filed. *See also United States v. Hatcher,* 300 F. App'x 659, 661 (11th Cir.2008) (30–day period runs from date of arrest on federal charges, even where federal government extensively involved in ongoing investigation of defendant's case); *Baxter v. United States,* 140 F. App'x 82, 83 (11th Cir.2005) ("[I]t is only a federal arrest, not a state arrest, which will trigger the commencement of the time limits set in the Act."); *accord United States v. Griffin,* 287 F. App'x 845, 848 (11th Cir.2008).

In reaching its conclusion in *Shahryar,* i.e., that the defendant's arrest by State authorities, did not trigger the provisions of the Act, the Eleventh Circuit relied on a Fourth Circuit decision, *United States v. Iaquinta*, 674 F.2d 260, 264

4

(4th Cir. 1982), which held that [T]he Speedy Trial Act has as its starting point the arrest of the defendant. Since the Act applies only to federal prosecutions it is only a *federal* arrest, not a state arrest, which will trigger the commencement of the time limits set in the Act." In rejecting the defendant's contention that that the Act applied to his state arrest, the court relied on a passage from a law review article which recognized that a limited exception to the general rule exists. *See also United States v. Woolfolk,* 399 F.3d 590 (4th Cir. 2005). In *Woolfolk* the court stated "[i]n *Iaquinata* we cited with approval, the following passage from a law review article:

> "For this limit to commence, a person must be held for the purpose of answering to a federal charge. Thus, if one is held by state officers on a state charge and subsequently turned over to federal authorities for federal prosecution, the starting date of the time period is the date that the defendant is delivered into federal custody. However, *if the person is held in state custody at the request of federal authorities, the date of arrest by the state officers is controlling.*"

*Woolfolk*, at 399 F.3d at 596 (emphasis original), quoting Martoche, *The Federal Speedy Trial Act: An Introduction and Guide, 4 Nat. Journal of Criminal Defense 295* (1978)).

The court in *Woolfolk* further re-iterated that there can be instances in which the Speedy Trial Act is triggered without a federal complaint, or a federal arrest, stating "[t]hus *Lee*[1] makes explicit that the provisions of the Speedy Trial Act can

---

[1] *United States v. Lee* 818 F.2d 302, 305 (4th Cir. 1987).

be triggered by something other than *actual* federal custody and federal arrest, i.e., "*any restraint resulting from federal action*." (emphasis original and added). Although *Lee* does not discuss the parameters of this language, we believe that a "restraint resulting from federal action," sufficient to trigger the time limits of the Speedy Trial Act, occurs when the Government has knowledge that an individual is held by state authorities solely to answer to federal charges." *Woolfolk*, 399 F.3d at 596. (internal citations omitted).

Similarly in *United States v. Rodriguez-Amaya*, 521 F.3d 437, 441-42 (4th Cir. 2008), the court recognized "a "ruse exception" to the Speedy Trial Act. The *Amaya* court, citing the Ninth Circuit's decision in *United States v. Cepeda-Luna*, 989 F.2d 353 (9th Cir. 1993), stated that "the requirements of the Act would lose all meaning if federal criminal authorities could collude with civil or state officials to have those authorities detain a defendant pending federal criminal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act, and that if a court found evidence of such collusion, the provisions of the Act could be applied to state or civil detentions. *Rodriguez Amaya*, 521 F.3d at 442.

In *United States v. Alvarado-Linares*, 1:10-CR-00086-RWS, 2011 WL 7807780 (N.D. Ga. Nov. 14, 2011) *report and recommendation adopted*, 1:10-CR-00086-RWS, 2012 WL 1632048 (N.D. Ga. May 8, 2012)(unpublished), relying on the general rule that the 30-day indictment period begins with a federal arrest,

6

Magistrate Judge Clayton Scofield rejected a similar claim that the government's actions violated the Act where there was no involvement by the federal government in the initial state incarceration and arrest.  Magistrate Scofield, however, went on to note that the "[d]efendant has not in this case made a showing of substantial or extensive involvement of the federal government in the state murder charges that were pending against Defendant when the instant indictment was returned, *much less a showing that the state charges were orchestrated by the federal government as a ruse for the purpose of holding Defendant pending the filing of its charges.  (Id.)* **(**emphasis added**).**  The facts presented in Alvardo-Linares differ starkly from those presented here.[2]

In *Alvarado-Linares* the defendant was arrested on the state charge of murder. *(Id.)*.  Subsequently, several months later, he was charged federally with being an alien in possession of a firearm and timely arraigned in federal court.[3] *(Id)*.  Other than e-mails between state and federal authorities indicating that the state was aware that there existed an ongoing federal investigation, and that if there were federal charges, the state charges would be dropped, there were no facts presented outlining the extensive involvement of federal authorities in orchestrating and directing the defendant's arrest.  *(Id)*. Notably the e-mails in

---

[2] And those facts which would be presented at a hearing in this matter.
[3] The government later superseded that indictment to add additional charges.

*Alvarado-Linares* suggest that the knowledge of and the existence of, the federal investigation came only after the defendant's state arrest.

Other circuits have similarly recognized a ruse exception to the general rule that the time limits of the Act are triggered by a federal arrest. In *United States v. Boyd*, 416 F. App'x 599 (9th Cir. 2008) the court stated that:

> [g]enerally, only a *federal* arrest—where a defendant is detained pursuant to *federal* charges—is an "arrest" under the Speedy Trial Act, triggering the running of the thirty-day time period of § 3161(b). (citations omitted) This rule is not, however, absolute. *See id.* at 1494. "The Speedy Trial Act would lose all force if federal criminal authorities could arrange with state authorities to have the state authorities detain a defendant until federal authorities are ready to file criminal charges." *Id.* *"For this reason, Speedy Trial Act time periods may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act."* (emphasis added)(internal citations omitted).

In *United States v. Mooneyham*, 376 F. App'x 440, 441-42 (5th Cir. 2010), the Fifth Circuit agreed that a "ruse exception" existed to the Speedy Trial Act, stating that "[t]his Court has agreed with the Ninth Circuit, opining that the " 'ruse exception' [is] an effective way of protecting against the possibility of **collusion between federal criminal authorities and civil or state officials**." *United States v. De La Pena-Juarez,* 214 F.3d 594, 598 (5th Cir.2000) (citing *Cepeda-Luna,* 989 F.2d at 356)(emphasis added).

A hearing in this matter will demonstrate that federal authorities colluded with state and local authorities to avoid the application of the Speedy Trial Act;

and that the investigation leading to Mr. Antunez-Pineda's arrest and detention for 140 days in state custody, was simply a "ruse" or "sham" for what was intended to be solely a federal prosecution of the defendant and others.  A hearing will establish that there was no state investigation.  Rather, there was a federal investigation that was conducted in the state by federal authorities.  During the course of that investigation, Mr. Ramon Antunez-Pineda was arrested by local authorities, at the direction of DEA, and held in state custody until the conclusion of the instant investigation.  Once the federal investigation was concluded, Mr. Antunez-Pineda was indicted federally and the state charges were dismissed.

As the instant investigation and the ensuing arrest and detention of Mr. Antunez-Pineda in state custody was a ruse and federal and state authorities colluded to avoid the Speedy Trial Act, the instant indictment should be dismissed.

WHEREAS, the defendant prays that this court will;

(1) Hold an evidentiary hearing on his motion to dismiss;
(2) Allow the defendant to conduct supplemental discovery and order that the government provide supplemental discovery with regards to the instant claims;
(3) Allow the defendant to supplement the instant motion after a hearing on this matter; and
(4) Dismiss the instant indictment.

[signature page to follow]

Dated: February 4, 2014.

                                                  Respectfully submitted,

                                                  <u>/s/ William H. Thomas Jr.</u>
                                                  William H. Thomas, Jr.
                                                  Georgia Bar No. 706610
                                                  Attorney for Defendant

The W. H. Thomas Firm, LLC
75 Fourteenth Street, 25th Floor
Atlanta, GA 30309
(404) 897-3523 (ofc)
(678) 965-1781 (fax)

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | CRIMINAL INDICTMENT |
| v. ) | |
| ) | CASE NO.  1:13-CR-382 |
| ) | |
| RAMIRO ANTUNEZ-PINEDA, ) | |
| ) | |
| ) | |
| Defendant. ) | |

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all parties of record.

Dated:  February 4, 2014.

/s/ William H. Thomas Jr.
William H. Thomas Jr.
Attorney for Defendant

The W.H. Thomas Firm, LLC
75 Fourteenth Street, 25th Floor
Atlanta, GA 30309
(404) 897-3523 (ofc)
(678) 965-1781 (fax)

1